[No. B073926. Second Dist., Div. Five. Apr. 26, 1994.]

MARY P. JERNIGAN, Plaintiff and Appellant, v.
FORD MOTOR COMPANY, Defendant and Respondent.

## COUNSEL

Lawrence J. Huthens and Rodolfo A. Aguirre for Plaintiff and Appellant.

Harrington, Foxx, Dubrow & Canter, Mark A. Juhas, Mark W. Flory and Judith T. Alvarado for Defendant and Respondent.

## OPINION

**ARMSTRONG, J.**—This appeal presents a single question regarding the interpretation of the Song-Beverly Consumer Warranty Act (the Act), Civil Code[1] section 1790 et seq. Specifically, we are asked to determine whether, in an action concerning a new motor vehicle, the buyer can recover civil penalties from the manufacturer for a willful violation of the Act if the manufacturer maintains a qualified third party dispute resolution process pursuant to statute. The trial court found that in those circumstances civil penalties may not be recovered. We disagree, and reverse the judgment.

---

[1]All further statutory references are to the Civil Code.

## Factual and Procedural Summary

Appellant Mary Jernigan bought a new motor vehicle from Ford in 1990. In 1991 she filed this lawsuit, alleging that the motor vehicle did not conform to the warranty, that the motor vehicle had not been brought into conformity with the warranty after a reasonable number of attempts at repair, and that Ford willfully violated the Act by failing to replace or repurchase the motor vehicle. Jernigan sought actual damages, a civil penalty of two times the actual damages, and attorney fees.

Prior to trial, the parties sought a ruling on the claim for civil penalties. Their positions before the trial court were identical to their positions on appeal. Jernigan contends that the Act provides for civil penalties in two circumstances: civil penalties are available on a showing that the Act was willfully violated; and, in an action concerning a new motor vehicle, civil penalties are available without a showing of willfulness if the manufacturer does not maintain a qualified dispute resolution process pursuant to other provisions of the Act.[2]

■ Ford argues that in an action concerning a new motor vehicle the Act allows civil penalties only against those manufacturers who do not maintain a qualified dispute resolution process.

The parties agree that Ford maintained a qualified third party dispute resolution process.

The trial court agreed with Ford, ruling that Jernigan was not entitled to recover civil penalties. After the trial court ruled, the parties stipulated to damages. Under the stipulation, Ford agreed to pay Jernigan $28,707.89, and Jernigan agreed to return the car to Ford.

## Discussion

On a question of statutory interpretation, we independently determine the proper interpretation, and are not bound by the trial court's ruling. The objective of statutory interpretation is to ascertain and effectuate legislative intent. In determining that intent, we look first to the language of the statute. Where the words of the statute are clear, we may not add to or alter them. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

---

[2]Section 1793.22, applicable to manufacturers of new motor vehicles only, sets forth the requirements for a qualified dispute resolution process, and provides a benefit to a manufacturer who maintains such a process, relating to the application of a statutory presumption defining "a reasonable number of attempts to repair."

This case presents a question about the interpretation of section 1794, subdivisions (c) and (e). In order to understand those subdivisions, we briefly review the statutory scheme. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17 [194 Cal.Rptr. 722].)

Overall, the Act concerns the warranty obligations of manufacturers of consumer goods, as defined, including new motor vehicles. Section 1794, subdivision (a) provides for a civil cause of action by "[a]ny buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under a . . . warranty or service contract." Section 1794, subdivision (b) sets out "[t]he measure of the buyer's damages in an action under this section." Those damages include "the rights of replacement and reimbursement as set forth in subdivision (d) of Section 1793.2," and other damages.

Section 1793.2, subdivision (d) figures in our analysis. Under section 1793.2, subdivision (d)(1), a manufacturer of consumer goods must replace goods which cannot be repaired after a reasonable number of attempts, or reimburse the buyer for the value of those goods. Section 1793.2, subdivision (d)(2) contains similar replace-or-reimburse provisions, applicable to manufacturers of new motor vehicles. Subparts further define the manufacturer's duty.

At the heart of this case, section 1794, subdivision (c) provides that: "If the buyer establishes that the failure to comply was willful, the judgment may include . . . a civil penalty which shall not exceed two times the amount of actual damages." Section 1794, subdivision (e) provides that: "(1) Except as otherwise provided in this subdivision, if the buyer establishes a violation of paragraph (2) of subdivision (d) of Section 1793.2 [the replace-or-reimburse requirements for new motor vehicle manufacturers], the buyer shall recover reasonable damages and attorney's fees and costs, and may recover a civil penalty of up to two times the amount of damages. [¶] (2) If the manufacturer maintains a qualified third-party dispute resolution process . . . , the manufacturer shall not be liable for any civil penalty pursuant to this subdivision." Subparagraphs (3) and (4) of subdivision (e) set forth other circumstances under which the manufacturer is not be liable for a civil penalty "under this subdivision." And, section 1794, subdivision (e)(5) provides that: "If the buyer recovers a civil penalty under subdivision (c), the buyer may not also recover a civil penalty under this subdivision for the same violation."

The trial court ruled that section 1794, subdivision (e) is the exclusive damage provision for actions concerning new motor vehicles, and thus that

the section 1794, subdivision (e)(2) exemption for manufacturers with qualified dispute resolution processes means that such a manufacturer is not liable for a civil penalty, regardless of the willfulness of its violation of the Act.

However, the plain language of the statute is to the contrary. Under that language, where there is a dispute resolution process "the manufacturer shall not be liable for any civil penalty *under this subdivision.*" (Italics added.) Consistent with usage throughout the Act, "subdivision" can refer only to subdivision (e) of section 1794. By use of the phrase "under this subdivision," the Legislature limited the exemption. It applies only to the civil penalties for nonwillful violations recoverable under section 1794, subdivision (e), and does not apply to penalties which may be available under another subdivision, i.e., 1794, subdivision (c).

We cannot agree that section 1794, subdivision (e) is the exclusive damage provision for actions on new motor vehicles, because the statute itself provides otherwise. Paragraph (5) of section 1794, subdivision (d), which prohibits a buyer who brings an action against a new vehicle manufacturer from recovering civil penalties under both section 1794, subdivision (c) and section 1794, subdivision (e), clearly anticipates that a buyer bringing such an action can request a civil penalty under subdivision (c). And, section 1794, subdivision (b), setting forth the measure of damages for all actions under the Act, specifically refers to section 1793.2, subdivision (d), which, as we have seen, includes the remedies available to new car buyers.

Although we know of no case authority directly on point, related case law supports our decision. Under Ford's analysis, civil penalties under section 1794, subdivision (c) for willful violations of the Act could never be available in actions on new motor vehicles. However, case law has allowed such penalties. (See *Ibrahim* v. *Ford Motor Co.* (1989) 214 Cal.App.3d 878, 893 [263 Cal.Rptr. 64] and *Kwan* v. *Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174 [28 Cal.Rptr.2d 371] [both concerning the applicable definition of "willful."].)

Also illuminating is *Suman* v. *BMW of North America, Inc.* (1994) 23 Cal.App.4th 1 [28 Cal.Rptr.2d 133], an action on a new motor vehicle. The issue before the court was whether under section 1794, subdivision (e), civil penalties may be had where the violation is not willful. The court determined that willfulness is not required. In analyzing the statute, the court noted that "there are two separate means by which a plaintiff in a section 1794 suit might recover a civil penalty against the defendant. Subdivision (c) of section 1794 covers civil penalties for suits concerning *any* type of 'consumer goods,' as that term is used in the Act. Subdivision (e) of section 1794 is

more limited in its application, and permits such penalties when the consumer goods at issue are new motor vehicles." (23 Cal.App.4th at pp. 6-7.) Thus, in actions on all consumer goods civil penalties may be had for willful violations. In actions on new motor vehicles only, civil penalties may be had without a showing of willfulness, unless the manufacturer maintains a qualified dispute resolution process.

Finally, we note that both parties argue in support of their positions the legislative intent to encourage new vehicle manufacturers to maintain dispute resolution processes, and to confer a benefit on manufacturers for doing so. That intent is apparent from the statute, but is not in itself illuminating, since it does not tell us how much of a benefit the Legislature intended to confer—exemption from all civil penalties, or merely exemption from civil penalties for nonwillful violations. The answer is contained in the language of the statute. The Legislature expressed its intent in the statute, and we need not and do not delve further into the legislative history.

### Disposition

The judgment is reversed. Appellant shall recover costs and attorney fees on appeal. (*Morcos* v. *Board of Retirement* (1990) 51 Cal.3d 924, 927 [275 Cal.Rptr. 187, 800 P.2d 543].)

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied May 12, 1994.